```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/15/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
BROWN RUDNICK, LLP,                                                   :
                                                                      :
                           Plaintiff,                                 :           13-CV-4348 (JMF)
                                                                      :
         -v-                                                          :           OPINION AND ORDER
                                                                      :
SURGICAL ORTHOMEDICS, INC.,                                           :
                                                                      :
                           Defendant and Counter-Plaintiff            :
                                                                      :
         -v-                                                          :
                                                                      :
BROWN RUDNICK, LLP and CELIA GALVAN,                                  :
                                                                      :
                           Counter-Defendants,                        :
                                                                      :
----------------------------------------------------------------------X
                                                                      :
STEVEN HEWES and ANDREW HEWES,                                        :
                                                                      :
                           Plaintiff-Intervenors,                     :
                                                                      :
         -v-                                                          :
                                                                      :
CELIA GALVAN and BROWN RUDNICK, LLP,                                  :
                                                                      :
                           Defendants.                                :
                                                                      :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Brown Rudnick, LLP ("Brown Rudnick"), a law firm, initiated this lawsuit against

Surgical Orthomedics, Inc. ("SOI"), its former client, to collect attorney's fees it allegedly

earned in representing SOI and to collect damages related to malpractice actions that SOI filed

against it.  (Compl. (Docket No. 1)).  SOI asserted counterclaims against Brown Rudnick and a

Brown Rudnick partner, Emilio Galvan, for, among other things, legal malpractice.  (Second

Amended Answer & Second Amended Counterclaim ("Counterclaim") (Docket No. 47).  In

addition, the officers and directors of SOI during the relevant time period, Steven and Andrew Hewes (the "Hewes Brothers"), intervened and filed an intervention complaint against Brown Rudnick and Galvan.  (Amended Compl. in Intervention ("Intervention Complaint or Intervention Compl.") (Docket No. 48)).  In February 2014, Emilio Galvan passed away, and Celia Galvan was subsequently substituted for Emilio Galvan in her capacity as the administrator of Emilio Galvan's estate.  (Docket Nos. 74, 78).  Presently before the Court is Brown Rudnick and Celia Galvan's (collectively, the "Counter-Defendants") consolidated motion to dismiss and motion for partial summary judgment.  (Docket. No. 54).  Specifically, Counter-Defendants seek dismissal of the Counterclaim and the Intervention Complaint, as well as summary judgment on certain elements of Brown Rudnick's third count for breach of contract against SOI.  For the reasons discussed below, the motion to dismiss is GRANTED in part and DENIED in part.  And although Brown Rudnick is the only party that has moved for summary judgment, the Court concludes that SOI is entitled to judgment as a matter of law with regard to Brown Rudnick's third cause of action; accordingly Brown Rudnick's third cause of action is dismissed.

## BACKGROUND

To the extent relevant to the motion to dismiss, the following facts are taken from the Counterclaim, the Intervention Complaint, and documents incorporated by reference in those pleadings.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  To the extent relevant to the motion for partial summary judgment, the following facts are undisputed, and are derived from the parties' Local Rule 56.1 Statements of Material Facts and the evidence they submitted in connection with the motion.

**A.  The Relationship Between SOI and Stryker Spine**

SOI is a Texas corporation that markets, promotes, and sells surgical supplies and products.  (Intervention Compl. ¶ 9; Compl. ¶ 3).  During the time period relevant to this lawsuit, the Hewes Brothers served as SOI's directors and officers.  (Intervention Compl. ¶ 9).  From February 2006 to December 2008, SOI served as a distributor in the Dallas-Forth Worth region of Texas for Stryker Spine, a division of the Howmedica Osteonics Corporation.  (*Id.* ¶ 10).  Stryker Spine develops, manufactures, and sells specialty spinal implants, products, and instruments.  (*Id.* ¶ 10; Decl. Andrew B. Ryan Supp. Brown Rudnick LLP's Mot. Dismiss ("Ryan Decl.") (Docket No. 55), Ex. A ("Award") 2).[1]

The relationship between SOI and Stryker was governed by two agreements, which the Court will refer to together as the "Agency Agreement."  The Agency Agreement — which is incorporated by reference into the Counterclaim and Intervention Complaint (*see, e.g.*, Counterclaim ¶ 9; Intervention Compl. ¶ 13) — contained non-compete clauses, pursuant to which SOI and the Hewes Brothers agreed to refrain from engaging in certain behavior for the duration of the agreement and for one year after its termination.  (Ryan Decl., Ex. B ("Agency Agreement") ¶ 15(a)(ii)).  In particular, Paragraph 15 of the Agreement provided that the three were not to "manufacture, sell, market or deliver any product, or participate in any manner in such activities, if such product is in competition with any Product manufactured, sold, marketed or distributed for sale by Stryker Spine."  (*Id.* ¶ 15(a)(ii)(x)).  The Agreement also provided that, if Stryker failed to extend the contract, Stryker Spine would pay SOI certain termination fees,

---

[1]      There is no dispute that the Court may rely on the Award in deciding this motion to dismiss because it is incorporated by reference into the Counterclaim and Intervention Complaint.  (*See, e.g.*, Counterclaim ¶ 23; Intervention Compl. ¶ 42).

and would retain the Hewes Brothers as paid consultants for one year following Stryker Spine's failure to extend (*Id.* ¶¶ 11(e)(i), 15(b)).

## B.  The Dispute Between SOI and Stryker Spine

On December 3, 2008, Stryker Spine informed SOI that it would not renew the Agency Agreement; accordingly, the Agreement expired, by its terms, on December 31, 2008. (Intervention Compl. ¶ 10; Award 3).  Stryker Spine, however, did not pay SOI or either of the Hewes Brothers any termination or consulting fees.  (Award 4).  Approximately seven months later, Stryker Spine filed a demand for arbitration with the American Arbitration Association, claiming that SOI and the Hewes Brothers (collectively, the "Former Clients") had been violating the Agreement's non-compete clause by selling competitive products through an entity called Mach Medical LLC.  (Intervention Compl. ¶ 13).  To represent them in the arbitration, the three Former Clients retained the services of Brown Rudnick (and its partner, Emilio Galvan), as well as Texas attorney Teresa A. Ford and her law firm.  (*Id.* ¶ 12).

On October 21, 2011, the arbitration panel (the "Panel") issued an award in Stryker Spine's favor.  (*Id.* ¶ 14).  To the extent relevant here, the Panel found that the Former Clients had violated the non-compete provision in numerous ways, including by selling competing lines of products in the Dallas-Forth Worth region from certain manufacturers (Award 5); by forming and operating an organization called the North Texas Spine Society ("NTSS") that solicited surgeons in the region (*id.* 6); by creating and running another organization, ASI, that invited Stryker Spine customers to a dinner meeting and attempted to persuade them to use competing product lines (*id.* 7); and by forming and operating Mach Medical, a distributor of orthopedic and spine products that was "created . . . to circumvent the Stryker Spine non-compete agreement" (*id.* 7-8).  Specifically with regard to Mach Medical, the arbitration panel noted that

Steven Hewes had testified "that monies of Mach Medical and SOI were commingled, that he and his brother received Mach Medical monies, and shared in Mach Medicals profits and losses." (*Id.* 8).  The Panel also observed that, "[u]ltimately, [the Former Clients] stipulated that the activities of Mach Medical could be attributed to them."  (*Id.* 9).  The Panel found the Former Clients liable for damages totaling $3,325,543.64, comprised of $3,298,434 in lost profits and $27,109.64 in interest.  (*See* Award 22-23).

## C.  The Dispute Between SOI and Brown Rudnick

On November 7, 2011, Stryker Spine initiated proceedings in the United States District Court for the District of New Jersey to confirm the award.  (Counterclaim ¶ 26).  In early December, the Former Clients terminated Brown Rudnick as counsel, and asked Brown Rudnick to provide its files to new counsel to defend the confirmation proceedings.  (*Id.* ¶ 27).  Brown Rudnick refused to do so, however, asserting that it had not been paid for its representation in the arbitration proceedings.  (*Id.* ¶ 28).  On June 29, 2012, the United States District Court for the District of New Jersey issued an order granting Stryker Spine's petition to confirm the award, and judgment was entered on July 3, 2012.  (*Id.* ¶ 31).

SOI subsequently brought a series of malpractice actions against Brown Rudnick.  First, on December 21, 2011, SOI filed suit against Brown Rudnick and Teresa Ford in Texas state court.  (Surgical Orthomedics' Counter-Statement of Material Facts Opp'n Brown Rudnick's Mot. Partial Summ. J. ("Rule 56.1 Statement") (Docket No. 66) ¶ 5).  On May 11, 2012, that complaint was dismissed as against Brown Rudnick on the basis of a forum selection clause in the parties' engagement letter providing that disputes related to Brown Rudnick's representation of SOI were to be "brought in a state or federal court located in the State and City of New York." (Decl. Lawrence McNamara Supp. Surgical Orthomedic's Opp'n Brown Rudnick's Mot. Partial

Summ. J. ("McNamara Decl.") (Docket No. 60), Ex. B; Ryan Decl., Ex. C ("Engagement Letter") 3).  Thereafter, SOI re-filed the malpractice suit in New Jersey; on June 21, 2013, it too was dismissed based on the forum selection clause.  (Rule 56.1 Statement ¶¶ 6, 10; *Surgical Orthomedics, Inc. v. Brown Rudnick LLP*, No. 12-CV-6652 (ES), 2013 WL 3188920 (D.N.J. June 21, 2013)).

That same day, Brown Rudnick filed the instant lawsuit against SOI.  (Docket No. 1).  In the Complaint, Brown Rudnick asserts three breach of contract counts against SOI: first, based on SOI's failure to pay attorney's fees (Compl. ¶¶ 23-27); second, based on SOI's receipt of, and failure to object to, Brown Rudnick's regularly provided invoices (*id.* ¶¶ 28-33); and third, for SOI's breach of the forum selection clause in filing the Texas and New Jersey actions (*id.* ¶¶ 34-37).  On July 30, SOI filed its answer and asserted counterclaims against Brown Rudnick for breach of fiduciary duty, breach of contract, legal malpractice, unjust enrichment, and exemplary damages.  (Docket No. 7).  SOI amended its counterclaims on August 20, adding Galvan as a defendant, asserting claims for breach of fiduciary duty, legal malpractice, and exemplary damages against Galvan, and adding a claim for "rescission and restitution" against Brown Rudnick.  (Docket No. 13).  SOI amended its counterclaims once more, though the causes of actions and named counter-defendants remained the same.  (Counterclaim).  The Hewes Brothers then intervened, asserting causes of action for legal malpractice, breach of fiduciary duty, and exemplary damages against Brown Rudnick and Galvan.  (Docket Nos. 44, 48).

As noted, presently before the Court is a consolidated motion to dismiss and a motion for partial summary judgment brought by Brown Rudnick and Galvan.  (Docket No. 54).  The motion to dismiss seeks dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of SOI's Counterclaim and the Hewes Brothers' Intervention Complaint.  (*Id.*).  The

motion for partial summary judgment, brought pursuant to Rule 56, seeks judgment on two elements of the third count of Brown Rudnick's complaint. (*Id.*). The Court first addresses the motion to dismiss, and then turns to the motion for partial summary judgment.

## THE MOTION TO DISMISS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff — or, in this case, the Counter-Plaintiff and the Plaintiff-Intervenors — has failed to plead sufficient facts to state a claim to relief that is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim that is facially plausible must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the Former Clients must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the Former Clients have not "nudged their claims across the line from conceivable to plausible, their [claims] must be dismissed." *Id.* at 570.

## A. Malpractice Claims

The Court first addresses the Former Clients' malpractice claims. To state a viable claim for malpractice, a plaintiff must plausibly allege four elements: "(1) the existence of an attorney-client relationship; (2) negligence on the part of the attorney or some other conduct in breach of that relationship; (3) proof that the attorney's conduct was the proximate cause of injury to the plaintiff; and (4) proof that but for the alleged malpractice the plaintiff would have been

successful in the underlying action." *Grosso v. Biaggi*, No. 12-CV-6118 (JMF), 2013 WL 3743482, at *3 (S.D.N.Y. July 17, 2013) (internal quotation marks omitted).  In the context of legal malpractice, negligence means that the lawyer "failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community." *Healy v. Finz & Finz, P.C.*, 918 N.Y.S. 2d 500, 502 (2d Dep't 2011).

Here, the Former Clients essentially allege three theories of malpractice.  First, they claim that Counter-Defendants were negligent by failing to disclose and obtain waivers for certain conflicts of interest among SOI and the Hewes Brothers.  (SOI's & Hewes Brothers' Joint Mem. Law Opp'n Mot. Dismiss ("Former Clients' Opp'n Mem.") (Docket No. 61) 6-11).  The Former Clients argue that, laboring under such conflicts, Counter-Defendants failed to adequately assert certain defenses and cross-claims in the arbitration, and entered into stipulations of uncontested facts that were not warranted.  (*Id.* at 10, 12-13).  Second, the Former Clients allege that Counter-Defendants committed more general failings in terms of how they prepared for the arbitration, by inadequately preparing the Hewes Brothers for their depositions and by failing to present certain witnesses at the arbitration.  (*Id.* at 13, 16, 25).  Third, the Former Clients claim that Counter-Defendants committed malpractice by inappropriately asserting a retaining lien on the Former Clients' litigation files.[2]  (*Id.* at 28-30).  The Court addresses the three theories of malpractice in turn.

---

[2]      In their opposition memorandum, the Former Clients contend that Counter-Defendants' assertion of the retaining lien forms the basis for their fiduciary duty claim rather than their malpractice claim.  (Former Clients' Opp'n Mem. 30).  That is true for the Intervention Complaint (Intervention Compl. ¶¶ 69-70), but not for the Counterclaim, which lists "the refusal to turn over SOI's client files" as a basis for SOI's legal malpractice claim (Counterclaim ¶ 60). In either case, the analysis of the claim is the same.

**1.   Conflict-of-Interest Theory**

Turning first to the conflict-of-interest theory, "[a]lthough . . . a violation of a disciplinary rule does not in and of itself amount to actionable negligence on the part of an attorney, liability can follow where the client can show that he or she suffered actual damage as a result of the conflict."  *Tabner v. Drake*, 780 N.Y.S.2d 85, 89 (3d Dep't 2004) (citations omitted); *see also Pillard v. Goodman*, 918 N.Y.S.2d 461, 462 (1st Dep't 2011) (noting that "[w]hile . . . allegations of a conflict of interest or a violation of attorney disciplinary rules alone could not support of action, liability can follow where the divided loyalty results in malpractice").  In this case, the Former Clients allege that Counter-Defendants violated Rule 1.7 of the New York Rules of Professional Conduct, which provides that a lawyer "shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests" unless, *inter alia*, each affected gives informed consent, in writing.  N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.  (Former Clients' Opp'n Mem. 6-11).  More specifically, the Former Clients allege that Brown Rudnick labored under two specific sources of conflict.  First, they claim that a conflict existed between SOI, on the one hand, and the Hewes Brothers, on the other, because of a clause in the Agency Agreement that capped the Hewes' Brothers liability but not SOI's.  (Intervention Compl. ¶ 20; Former Clients' Opp'n Mem. 16-19).  Second, the Former Clients argue that a conflict existed between Andrew Hewes, on the one hand, and SOI and Steven Hewes, on the other, because certain defenses were available to Andrew Hewes but not to the others.  (Intervention Compl. ¶¶ 17-18; Former Clients' Opp'n Mem. 13).  Both contentions fail as a matter of law.[3]

---

[3]     Before proceeding to its analysis, the Court notes that there is some ambiguity in the Former Clients' arguments as to how to the alleged conflicts give rise to a claim of legal malpractice.  At certain points, the Former Clients seem to suggest that Counter-Defendants were

### a. The Limitation-of-Liability Conflict

The first claim — based on the Hewes Brothers' allegedly limited liability — fails because no reasonable lawyer would have concluded that the clause at issue did, in fact, create a conflict that Counter-Defendants were obligated to disclose.  The clause at issue can be found in Paragraph 10 of the Agency Agreement, titled "Personal Guaranty."  (Agency Agreement ¶ 10). In relevant part, that Paragraph provides that "Steven Hewes and Andrew Hewes . . . hereby, jointly and severally, personally guarantee the performance of all obligations of [SOI] under this Agreement, including the payment of all amounts due to Stryker Spine by [SOI], up to the maximum aggregate amount of $750,000."  (*Id.*).  On its face, the $750,000 cap created by that provision would appear to apply only to the Hewes Brothers' personal guarantee of SOI's obligations, not to their individual liability for violations of the non-compete provisions.  The Former Clients argue, however, that, when read together with another provision of the Agency Agreement, Paragraph 10 created an asymmetry in potential liability that, in turn, caused divergent interests among the Former Clients because invoking the provision "would have saddled SOI with a greater percentage of damages awarded [than the Hewes Brothers]." (Intervention Compl. ¶ 20; *see also* Former Clients' Opp'n Mem. 17-18).

Specifically, the Former Clients point to a sentence that follows the main text of the Agreement and immediately precedes the Hewes Brothers' signatures.  (*Id.*).  That sentence

---

negligent merely by failing to disclose the conflicts themselves.  (*See* Former Clients' Opp'n Mem. 8 ("When even the potential for a conflict exists, a lawyer breaches his professional duties and violates New York law by failing to disclose it.").  At other points, the Former Clients suggest that Counter-Defendants were negligent in failing to assert the individual defenses referenced above.  (*See id.* at 10 ("Brown Rudnick's failure to zealously defend each of its clients individually as to the alleged competitive actions of each client highlights the existence of a quintessential conflict in representing all three clients.").  The distinction is ultimately immaterial to the Court's analysis and conclusion.

reads: "Pursuant to and in accordance with Paragraph 10 hereof, the undersigned hereby guarantees payment and performance of all [SOI's] obligations under this Agreement, and agrees to be bound by the provisions of this Agreement, including without limitation, Paragraphs 10, 15, and 18 hereof."  (Agency Agreement, at 39).  On the Former Clients' reading, the clause "[p]ursuant to and in accordance with Paragraph 10 hereof" modifies not only the Hewes Brothers' personal guarantee, but also their "agree[ment] to be bound by the provisions of [the] Agreement."  (Former Clients' Opp'n Mem. 17-18).[4]

That argument is without merit.  First, the Former Clients' reading of the sentence "strain[s] the contract language beyond its reasonable and ordinary meaning," as the last clause ("and agrees to be bound…") stands on its own and is not modified by the "pursuant to" clause. *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (alterations and internal quotation marks omitted); *see also Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) ("[J]udgment as a matter of law is appropriate if the contract language is unambiguous.").  Second, and relatedly, the Former Clients' interpretation is nonsensical on its own terms.  Paragraph 10's limitation of liability is inextricably tied to the personal guarantee of SOI's obligations; again, it reads "Steven Hewes and Andrew Hewes . . . personally guarantee the performance of all obligations of [SOI] up to the maximum aggregate amount of $750,000."  (Agency Agreement ¶ 10).  There is simply no way to read the non-compete provisions of Paragraph 15, which are entirely unrelated to the personal guarantee,

---

[4]     At one point in their opposition memorandum, the Former Clients argue that the Hewes Brothers were not bound by the Agreement at all because they are not named as parties in the Agreement's first paragraph.  (Former Clients' Opp'n Mem. 18-19).  That argument, however, is frivolous, as the Hewes Brothers clearly evidenced an intent to be bound by the non-compete clause (and certain other clauses of the Agreement) by virtue of the very signatures upon which the Former Clients rely for their limitation-of-liability conflict argument.

"pursuant to" the language of Paragraph 10.  Accordingly, the limitation of liability clause did not create a conflict that Counter-Defendants were obligated to disclose; it follows that Counter-Defendants were not negligent in failing to assert the defense at the arbitration.[5]

### b.  The Andrew Hewes Individual Defense Conflict

Next, the Former Clients argue that there was a conflict between SOI and Steven Hewes, on the one hand, and Andrew Hewes, on the other, because of defenses that were allegedly available only to the latter.  In particular, the Intervention Complaint contends that Andrew Hewes had "little involvement with Mach Medical," and that he "spent the vast majority of his time in 2009 selling orthopedic products, which were not competitive with the spine and tissue products sold by Stryker."  (Intervention Compl. ¶¶ 16-17).  In theory, those individual defenses created a conflict between Andrew Hewes and the other Former Clients because reducing Andrew Hewes's share of liability would proportionally increase the other Defendants' share.  Yet, the Former Clients argue, Counter-Defendants failed to disclose the conflict and, in fact, subordinated Andrew Hewes's interests to the other two by entering into stipulations stating that all three "sold, marketed, delivered, and distributed competing Spine and Tissue products," and that Mach Medical's actions were attributable to all three of them.  (Former Clients' Opp'n Mem. 12).  In addition, Counter-Defendants never gave Andrew Hewes the opportunity to "testify as to his lack of any real involvement in Mach and absence of any competitive sales." (Intervention Compl. ¶ 28).  Had Counter-Defendants more vigorously asserted Andrew Hewes's

---

[5]      The Former Clients also argue that Counter-Defendants were negligent because of their failure to "consider or advise its clients of contribution or indemnity issues."  (Former Clients' Opp'n Mem. 10).  The basis for those claims, however, appears to be the limitation-of-liability provision in Paragraph 10 of the Agreement, which — as discussed — did not cap the Hewes Brothers' liability, and thus would have provided no basis for contribution or indemnity claims. (Counterclaim ¶ 15; Intervention Compl. ¶ 22).

individual defenses and not entered into the stipulations on his behalf, the Former Clients contend, the Panel would not have issued the award against him, or the damages assessed against him would have been substantially lower.  (*Id.* ¶ 18).

The Panel's decision, however, makes plain that the Former Clients' theory of causation is implausible.  Even if Counter-Defendants had not entered into the stipulations, and presented evidence suggesting that he had limited involvement with Mach Medical, the outcome would have been the same.  The decision details various ways in which the "respondents" — defined as SOI and the Hewes Brothers (Award 1) — violated the non-compete provisions, of which the formation and operation of Mach Medical was only one.  Significantly, the Panel's decision contained an extensive discussion of the Hewes Brothers' involvement with NTSS and ASI, both of which were clear attempts to market products that competed with Stryker Spine's products. (*Id.*, 6-7).  As for the stipulations, they are mentioned but once in the entire decision, and the Panel's finding that Mach Medical's activities were attributable to Andrew Hewes was largely based on Steven Hewes's testimony that "the monies of Mach Medical and SOI were commingled," and that "he *and his brother* received Mach Medical monies, and shared in Mach Medical[']s profits and losses."  (Award 8) (emphasis added).  Accordingly, the Former Clients have failed to state a claim for malpractice based on this second purported conflict.  *See, e.g.*, *Law Practice Mgmt. Consultants, LLC v. M&A Counselors & Fiduciaries, LLC,* 599 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (dismissing a legal malpractice claim where plaintiffs failed to allege that, but for attorney's negligence, they would have prevailed in litigation); *Finova Capital Corp. v. Berger*, 794 N.Y.S.2d 379, 381 (1st Dep't 2005) (similar).

### 2.  The Preparation-for-Arbitration Theory

The Court now turns to the Former Clients' second theory of malpractice, which is based on Counter-Defendants' performance leading up to and during the arbitration itself.  In particular, the Former Clients allege malpractice based on Counter-Defendants' failure to properly prepare Steven Hewes for his deposition, their failure to hire an expert witness, and their failure to present live testimony from certain doctors that would have been relevant to the Panel's damages analysis.  Some — but not all — of these allegations are sufficient to survive the instant motion to dismiss.

In particular, the Court finds sufficient the Former Clients' claims based on Counter-Defendants' failure to offer testimony from doctors who would have stated that "they would not have purchased Stryker products from anyone other than the Hewes Brothers, thus negating lost sales to those doctors as a source of damages for Stryker."  (Intervention Compl. ¶ 29). Although "[c]ourts . . . routinely h[o]ld that the decision to call or not to call certain trial witnesses is a question of strategy that generally does not rise to the level of malpractice," *Perkins v. Am. Transit Ins. Co.*, No. 10-CV-5655 (CM), 2013 WL 174426, at *17 (S.D.N.Y. Jan. 15, 2013), Counter-Defendants have not, in fact, articulated any strategic basis for their failure to present this testimony, *see Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 923-24 (S.D.N.Y. 1997) (noting that plaintiffs failed to "address[] defendants' strategic concerns"); *LIC Commercial Corp. v. Rosenthal*, 609 N.Y.S. 2d 301, 302 (2d Dep't 1994) (noting that the deposition testimony of the witness not called was "confusing and generally unfavorable to the plaintiff's position").  Discovery may reveal that Counter-Defendants made a reasonable strategic decision not to call the witnesses at issue, but there is no basis to dismiss the claim at this stage of the litigation.

The malpractice claim based on a failure to present a damages expert also survives. Although Counter-Defendants do articulate a reason for failing to present such an expert — namely, that it would have been wasteful to "pay an expert to perform simple math" (Reply Supp. Consolidated Mot. Dismiss & Mot. Partial Summ. J. ("Counter-Defendants' Reply Mem.") (Docket No. 67) 9) — the Award itself makes clear that arriving at the damages figure involved more than pure arithmetic.  Determining Stryker Spine's damages entailed, among other things, estimating the sales that Stryker Spine would have made but for the Former Clients' infringement — which, in turn, involved identifying the surgeons who would have continued to purchase products from Stryker Spine.  (Award 18-21).  That task involved some degree of judgment and expertise; in fact, the Panel noted that Stryker Spine's expert's methodology for estimating lost sales "would [have been] more compelling" if he had conducted an "independent examination of [Stryker Spine's] books and records" instead of simply procuring "statements and other information" from Stryker Spine executives.  (*Id.* 22).  Although the Panel did not simply "accept the damages analysis from Stryker's expert" (Intervention Compl. ¶ 48), as the Former Clients claim, the Panel did not have the benefit of an opposing expert's estimate either. Accordingly, that claim survives as well.  *See, e.g.*, *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. 07-CV-2514 (JS) (AKT), 2011 WL 5976076, at *6 (E.D.N.Y. Nov. 28, 2011) (finding that a proposed pleading stated a claim for legal malpractice where it alleged that no expert testimony was offered to counter the opposing party's valuation of damages, causing the party to settle case for more than it was worth).

By contrast, the Former Clients' allegations that Counter-Defendants did not adequately prepare the Hewes Brothers for their depositions or prepare Steven Hewes for his testimony at the arbitration are not sufficient to support a claim for malpractice.  (Intervention Compl. ¶¶ 25-

26).  Not only do the Former Clients fail to specify what, precisely, was inadequate about their preparation, but they also fail to allege how their testimony would have been different with more preparation, let alone how such preparation would have altered the outcome of the arbitration. That is, conclusory allegations aside, they fail to allege how their allegedly inadequate preparation caused them any damages.  *England v. Feldman*, No. 11-CV-1396 (CM), 2011 WL 1239775 (S.D.N.Y. Mar. 28, 2011), upon which the Former Clients rely, is therefore inapposite, as the plaintiffs in that case adequately "allege[d] that [defendant lawyer] was the proximate cause of [the p]laintiffs' damages," *id.*, at *4.

For similar reasons, the claim that Counter-Defendants committed malpractice by failing to provide information to the Panel regarding the consulting and termination fees purportedly due to the Hewes Brothers and SOI fails.  (*See* Former Clients' Opp'n Mem. 16).  In fact, the Panel unambiguously held that the Former Clients were *not* entitled to any such offsets; rejecting the Former Clients' argument that they were "free to compete with Stryker Spine because [Stryker Spine] did not make the post-termination payments," the Panel noted that "[t]o require Stryker Spine to make such payments while respondents were vigorously breaching the Non-Compete Provisions would be, to put it mildly, unreasonable and unfair."  (Award at 16).  Thus, it is implausible to believe that, had Counter-Defendants presented the Panel with the amounts of the offsets, as the Former Clients claim they should have, the damages would have been lower.

### 3.  Retaining Lien Theory

The Former Clients' final malpractice theory is grounded in Counter-Defendants' allegedly improper assertion of a retaining lien against their litigation files during the confirmation litigation in the United States District Court for the District of New Jersey. (Former Clients' Opp'n Mem. 26-29).

Before turning to the merits of that claim, the Court must first address whether it is governed by the law of New York, as Counter-Defendants contend, or New Jersey, as the Former Clients argue.  (*Compare* Mem. Law Supp. Consolidated Mot. Dismiss & Mot. Partial Summ. J. ("Counter-Defendants' Mem.") (Docket No. 56) 23 n.11 *and* Counter-Defendants' Reply Mem. 8 n.5 *with* Former Clients' Opp'n Mem. 27 n.19).  There is no dispute that the parties' engagement letter — which the Court is permitted to consider on this motion to dismiss as it is incorporated by reference into the Intervention Complaint (*see, e.g.* Counterclaim ¶ 46; Intervention Compl. ¶ 12) — is governed by New York law.  (Engagement Letter 3; *see also* Former Clients' Opp'n Mem. 27 n.19).  Under New York choice of law rules, "[a]bsent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (internal quotation marks omitted).  The Former Clients argue that the public policy exception applies, but they fail to explain how, as is required for this exception, the "application of [New York] law would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."  *Weiss v. La Suisse*, 154 F. Supp. 2d 734, 736 (S.D.N.Y. 2001) (internal quotation marks omitted).  The contacts between New York and the transaction at issue — namely, Counter-Defendants' agreement to provide legal services to the Former Clients in connection with the arbitration — are more than sufficient, as Galvan was licensed to practice in New York (Counterclaim ¶ 4; Intervention Compl. ¶ 4), and the engagement agreement itself is written on letterhead showing Brown Rudnick's New York address (Engagement Letter 1).  Accordingly, New York law applies.

Under New York law, an attorney is generally entitled to assert a lien on a client's papers for outstanding unpaid fees.  *See Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983); *Cheng v. Modansky Leasing Co.*, 73 N.Y. 2d 454, 458-9 (1989).  The Former Clients owed Brown Rudnick over $300,000 at the time that Counter-Defendants asserted the retaining lien; accordingly, Counter-Defendants argue, their action was lawful.  (*See* Intervention Compl. ¶ 53; Counterclaims ¶ 32; Counter-Defendants' Mem. 23-24).  An attorney is not entitled to assert a lien on its client's papers, however, when the attorney is discharged for cause.  *See, e.g.*, *Campagnola v. Mulholland, Minion &* Roe, 76 N.Y. 2d 38, 44 (1990); *see also Coccia v. Liotti*, 896 N.Y.S.2d 90, 100 (2d Dep't 2010).  An attorney is discharged for cause when he or she has "engaged in misconduct, has failed to prosecute the client's case diligently, or has otherwise improperly handled the client's case or committed malpractice."  *Coccia*, 896 N.Y.S.2d at 100.  Citing their malpractice claims, the Former Clients therefore argue that Counter-Defendants were discharged for cause.  (Intervention Compl. ¶ 54).  Counter-Defendants contend they were not.  (Counter-Defendants' Reply Mem. 7 n.4).

In light of the rulings above, the Court cannot resolve the retaining lien dispute on a motion to dismiss.  Although the Court found most of the Former Clients' malpractice claims to be implausible, and therefore subject to dismissal, the Former Clients' claims based on the alleged failures to call the doctor-witnesses and a damages expert remain.  Of course, discovery may reveal that the Former Clients' remaining malpractice theories are without factual bases, in which case the retaining lien claim would also fail.  At this stage of the litigation, however, the Court cannot conclude, as a matter of law, that Counter-Defendants were not discharged for cause, in which case they would not have been entitled to withhold the files.  Accordingly, the Former Clients' malpractice claim based on the retaining lien survives.

**B.  Other Causes of Action**

Finally, the Court turns to the Former Clients' remaining claims.  Other than the

malpractice claim, SOI asserts the following causes of action: breach of fiduciary duty, breach of

contract, rescission, unjust enrichment, and exemplary damages.  (Counterclaim ¶¶ 38-54, 64-

68).  The Hewes Brothers assert breach of fiduciary duty and exemplary damages claims in

addition to the malpractice claim.  (Intervention Compl. ¶¶ 67-75).  The Counter-Defendants

contend that each of these claims is either duplicative of the malpractice claim, or fails as a

matter of law.  (Counter-Defendants' Mem. 24-29).

First, the Court dismisses SOI's fiduciary duty, breach of contract, rescission, and unjust

enrichment claims, as they are all duplicative of the malpractice claim.  Where such claims are

"premised on the same facts and seek[] the identical relief sought in the legal malpractice cause

of action," they are redundant and should be dismissed.  *Weil, Gotshal & Manges, LLP v.*

*Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004).  Although the

Former Clients contend that their fiduciary duty, breach of contract, and unjust enrichment

claims "add facts to support the excessive nature of Brown Rudnick's fees" (Former Clients'

Opp'n Mem. 32), a review of the Counterclaim reveals that that is not the case.  In fact, what

made the fees excessive, according to the Counterclaim, are the very acts that form the basis for

the malpractice claims.  In particular, the Counterclaim alleges that the fees were excessive

because "Brown Rudnick and Galvan failed to properly prepare for or to present a defense in the

Arbitration, failed to provide the Panel with information it requested, failed to provide any

evidence (including the amount) of the contractual offsets to which SOI was entitled, and failed

to advise of the conflict in Brown Rudnick's and Galvan's representing SOI and the Hewes

Brothers jointly."  (Counterclaims ¶ 33).  The only distinct allegations related to excessive fees

in the counterclaims are the assertions that Counter-Defendants "over-assign[ed] timekeepers to the Arbitration matter," and "inflated the time charged for its services" (*id.* ¶ 34), but those allegations are entirely conclusory and thus inadequate.  Accordingly, SOI's breach of fiduciary duty, breach of contract, rescission, and unjust enrichment claims are dismissed.

In addition, the "exemplary damages" claims — which the Court understands as claims for punitive damages — asserted by SOI and the Hewes Brothers are dismissed.  First, as the Former Clients all but concede, New York law does not recognize an independent cause of action for punitive damages.  *See, e.g.*, *Fiesel v. Nanuet Properties Corp.*, 508 N.Y.S.2d 576, 577 (2d Dep't 1986) ("A demand for punitive damages does not amount to a separate cause of action for pleading purposes."); *Fox v. Issler*, 431 N.Y.S. 2d 69, 71 (2d Dep't 1980) (similar).  Second, and in any event, a claim for punitive damages requires pleading a "high degree of moral turpitude or wanton dishonesty," but neither the Counterclaim nor the Intervention Complaint does so in more than a conclusory manner.  *Englert v. Schaffer*, 877 N.Y.S.2d 780, 781 (4th Dep't 2009) (internal quotation marks omitted); *see also Gamiel v. Curtis & Riess-Curtis,  P.C.*, 791 N.Y.S.2d 78 (1st Dep't 2005) (denying motion to dismiss claims for attorney's alleged negligence, but granting it with respect to punitive damages).  The Counterclaim states that Counter-Defendants engaged in "intentional misconduct" conducted with "malice" (Counterclaim ¶ 68), and the Intervention Complaint alleges that Counter-Defendants exhibited "gross negligence and avarice in providing legal services" (Intervention Compl. ¶ 75), but neither pleading points to what acts or failures by Counter-Defendants meet such a standard, and none of the previously discussed allegations meet that standard either.

The Court will not, however, dismiss the Hewes Brothers' fiduciary duty claim.  Unlike the Counterclaim, the Intervention Complaint makes plain that the basis for its fiduciary duty

claim is Counter-Defendants' assertion of the retaining lien, which the Court has declined to dismiss. (*See* Intervention Compl. ¶ 69 ("Brown Rudnick and Galvan engaged in self-dealing and placed their interests above the Hewes Brothers by refusing to turn over the client files when they were requested.")).  Although the Court analyzed the retaining lien claim in the context of a malpractice claim, the claim survives as a fiduciary duty claim for the same reasons.  *See Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 22 (1st Dep't 2008) (noting that "in the context of an action asserting attorney liability, the claims of malpractice and breach of fiduciary duty are governed by the same standard of recovery").  The retaining lien claim does not form the basis for the Hewes Brothers' malpractice claim, and therefore it cannot be dismissed as duplicative.  The Hewes Brothers' fiduciary duty claim based on Counter-Defendants' assertion of the retaining lien therefore survives.

In sum, all of the Former Clients' claims against Counter-Defendants are dismissed, except as follows.  First, SOI's malpractice claim survives, but only to the extent that (1) it is premised on the failure to present expert witnesses or doctors at the arbitration that would have affected the arbitration panel's calculation of lost profits; or (2) it is premised on the assertion of the retaining lien.  Second, the Hewes Brothers' malpractice claim survives, but also only to the extent that it is premised on the failure to present expert witnesses or doctors at the arbitration that would have affected that Panel's calculation of lost profits.  Finally, the Hewes Brothers' fiduciary duty claim — to the extent that it is premised on Counter-Defendants' assertion of the retaining lien — also survives.

## THE MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court now turns to Brown Rudnick's motion for partial summary judgment.  As noted, Brown Rudnick moves for summary judgment on certain elements of its third cause of

action, which asserts breach of contract based on SOI's filing of the Texas and New Jersey

actions and resulting breach of the forum selection clause in the engagement letter.

## A.  The Summary Judgment Standard

The summary judgment standard is well established.  Summary judgment is appropriate

where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  An issue of fact

qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for

the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Roe v.

City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008).  To avoid summary judgment, a party must

advance more than a "scintilla of evidence," Anderson, 477 U.S. at 252, and demonstrate more

than "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).

It is also well established that, in considering a motion for summary judgment, a court

may grant summary judgment in favor of the non-moving party even without a formal cross-

motion if "there are no genuine issues of material fact" and "the law is on the side of the non-

moving party."  Orix Credit Alliance, Inc. v. Horten, 965 F. Supp. 481, 484 (S.D.N.Y. 1997).

"Summary judgment may be granted to the non-moving party in such circumstances so long as

the moving party has had an adequate opportunity to come forward with all of its evidence."  Id.

"Notice to the moving party of the intention to grant summary judgment in favor of the non-

moving party is not required . . . where summary judgment is granted to the non-moving party on

an issue which has been fully raised by the moving party."  Id. (citing Coach Leatherware Co. v.

*AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991); *see also Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97-CV-6308 (DC), 1999 WL 294806, at *2 n.2 (S.D.N.Y. May 11, 1999).

## B.  Discussion

Under New York law, a breach of contract claim requires proof of "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  Brown Rudnick seeks summary judgment against SOI on the third and fourth elements; namely, that SOI breached the engagement letter by filing the Texas and New Jersey actions, and that Brown Rudnick incurred damages as a result of this breach, comprised of attorney's fees and unspecified expenses. (Counter-Defendants' Mem. 6; Compl. ¶¶ 35-37).  SOI, however, contends that Brown Rudnick's claim fails as a matter of law because the American Rule, whereby "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule" precludes an award of damages based on attorney's fees and litigation expenses where, as here, such recovery is not specifically authorized by contract.  (SOI's Mem. Law Opp'n Mot. Partial Summ. J (Docket No. 64) 3 (quoting *A.G. Ship Maintenance Corp. v. Lezak*, 69 N.Y.2d 1, 5 (1986)).

The New York Court of Appeals has not definitively answered whether a party may recover attorney's fees and litigation expenses as damages for the breach of a forum selection clause.  Accordingly, the Court's task is to "predict how the state's highest court would resolve" the question, giving "the fullest weight to pronouncements of the state's highest court," and "proper regard to relevant rulings of the state's lower courts." *Runner v. N.Y. Stock Exchange, Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (internal quotation marks omitted).  "Decisions of New

York's intermediate appellate courts are helpful indicators of how the Court of Appeals would decide, but [the Court is] not strictly bound by decisions of the Appellate Division, particularly when [there is] persuasive data that the Court of Appeals would decide otherwise." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted).  Keeping in mind that the New York state courts are the "ultimate expositors of state law," the Court may also consider "the decisions of federal courts construing state law." *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 236 (S.D.N.Y. 2011) (internal quotation marks omitted).

As support for its argument that it is entitled to recover attorney's fees as damages for a breach of a forum selection clause under New York law, Brown Rudnick primarily relies on two cases holding that parties can, in fact, recover such damages: *Allendale Mutual Insurance Company v. Excess Insurance Company Ltd.*, 992 F. Supp. 278 (S.D.N.Y. 1998), and *Indosuez International Finance, B.V. v. National Reserve Bank*, 758 N.Y.S. 2d 308 (1st Dep't 2003).  By contrast, SOI principally relies on a more recent decision by the Honorable Kenneth M. Karas, *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230 (S.D.N.Y. 2011), holding to the contrary.  Absent a definitive ruling from the New York Court of Appeals, the Court agrees with the well-reasoned analysis and conclusions of Judge Karas.

In particular, the Court agrees that there is "persuasive data" in decisions of the New York Court of Appeals suggesting that that court would preclude the recovery of attorney's fees and litigation expenses as damages in a case such as this one.  *Versatile*, 819 F. Supp. 2d at 244.  As Judge Karas points out, the general rule that SOI's position would require this Court to adopt is that "a party may recover attorneys' fees from an opposing party whenever the fees can be characterized as 'damages' resulting from the opposing party's wrong, rather than as collateral

consequences of litigation." *Id.* at 244.  The Court of Appeals, however, has rejected such a rule

on multiple occasions.  For instance, although an exception to the American Rule permits

recovery of fees where a contract breacher or a tortfeasor causes a party to maintain or defend a

suit against a third party, *see Shindler v. Lamb*, 211 N.Y.S. 2d 762, 765 (N.Y. Sup. Ct. 1959), the

Court of Appeals has made clear that that exception does not apply with regard to the contract

breacher or tortfeasor himself, "even though either a tort or breach of contract makes litigation

against the tortfeasor or breaching party itself eminently foreseeable," *Versatile*, 819 F. Supp. 2d

at 244 (citing *Hunt v. Sharp*, 85 N.Y.2d 883, 885 (1995)).  *See also id.* (discussing New York

Court of Appeals rulings that an insured may not recover costs incurred suing an insurer to

provide coverage, even though such costs are a foreseeable result of the insurer's breach of its

duty to defend, and that, although a party bringing a common law indemnification claim can

recover attorney's fees incurred in connection with defending the suit brought by the injured

party, it cannot recover fees incurred by pursuing the indemnification claim itself (citing *Doyle v.

Allstate Ins. Co.*, 1 N.Y.2d 439, 443-44  (1956), and *Chapel v. Mitchell*, 84 N.Y.2d 345, 348

(1994)).

 Brown Rudnick argues that *Versatile Housewares* was incorrectly decided, but the Court

is unpersuaded.  First, it contends that awarding attorney's fees for breach of a forum selection

clause does not violate the prohibition on a "loser pays" system, because the damages are not

predicated on the opposing party having *lost* the underlying suit, but rather because a contract

was breached, causing foreseeable damages.  (Counter-Defendants' Mem. 31-32).  The

distinction that Brown Rudnick attempts to draw, however, is purely semantic.  Whether SOI

breached the contract and whether Brown Rudnick prevailed in the underlying suit are actually

the same question, as Brown Rudnick's defense in the Texas and New Jersey actions *was* that

SOI had breached the forum selection clause.  (*See* Rule 56.1 Statement ¶ 10; McNamara Decl.,

Ex. B).  Put differently, Brown Rudnick could not have brought this cause of action had it lost

the underlying actions, as a loss would imply that SOI had not, in fact, breached the forum

selection clause.  Allowing Brown Rudnick to collect attorney's fees as damages simply by

characterizing them as damages based on a breach of contract would "create an exception that

would swallow the 'American Rule,'" *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 82 F. Supp. 2d

227, 236 (S.D.N.Y. 2000), as it is well-established that a party cannot recover attorney's fees

from a contract-breaching opponent, even where the breach makes litigation eminently

foreseeable, *see Versatile*, 819 F. Supp. 2d at 244 (citing *Hunt v. Sharp*, 85 N.Y.2d 883 (1995)).[6]

       In seeking to discredit *Versatile Hardware*, Brown Rudnick also argues that awarding

parties attorney's fees for breach of a forum selection clause actually serves the purpose of the

American Rule, as it "incentiv[ize]s contracting parties to seek judicial redress in the agreed-

upon court," and denying attorney's fees for breach of a forum selection clause leaves the non-

---

[6]       In a footnote, Brown Rudnick appears to analogize its request for attorney's fees to a situation in which a plaintiff brings suit outside an agreed-upon forum and then voluntarily dismisses the suit after the defendant has incurred attorneys' fees in defending it.  (Counter-Defendants' Mem. 32 n.12).  In that scenario, Brown Rudnick argues, "[t]he defendant's claim for attorneys' fees would not be that the plaintiff lost the suit it dismissed.  It would instead be that the plaintiff breached a promise to the defendant."  (*Id.*).  Notably, however, Brown Rudnick cites no authority for its premise: that a defendant in such a scenario could recover attorneys' fees as damages for breach of the contract.  In fact, the law in this Circuit is clear that recovery of attorneys' fees after voluntary dismissal with prejudice is precluded by the American Rule.  *See, e.g.*, *Colombrito v. Kelly*, 764 F.2d 122, 133-34 (2d Cir. 1985).  And while courts have held that a defendant may recover attorneys' fees if a plaintiff voluntarily dismisses a suit *without* prejudice, *see id.*, that is a product of Rule 41(a)(2) of the Federal Rules of Civil Procedure, which provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2366 (3d ed. 2014) (noting that "[t]he district court may require the plaintiff to pay the defendant's attorney's fees as well as other litigation costs and disbursements" as a condition of dismissal under Rule 41(a)(2)).  The American Rule does not bar recovery of attorney's fees where authorized by statute or court rule, *see Versatile*, 819 F. Supp. 2d at 241-42, but here, no such statute or court rule exists.

breaching party "with little or no remedy for [the] breach."  (Counter-Defs.' Mem. 32-33).  As Judge Karas acknowledged, there are some truth to those arguments, but they are properly directed "to the New York Court of Appeals or legislature."  *Versatile*, 819 F. Supp. 2d at 246. Moreover, as Judge Karas also noted, the parties to an agreement can easily contract around the problem by expressly providing that a party can recover for attorney's fees and other litigation expenses in the event of a breach of the forum selection clause.  *See id.* at 241, 246.  In that regard, the American Rule serves only as a default rule, and Brown Rudnick — a well-respected law firm that presumably knows how to draft a contract — has only itself to blame for not drafting its engagement letter to provide for the damages it now seeks.

Finally, the decisions in *Allendale* and *Indosuez* do not alter the Court's view of the matter.  *See generally Versatile*, 819 F. Supp. 2d at 243-44 (discussing *Allendale* and *Indosuez*). Although *Allendale* imposed liability on a party for expenses it incurred in defending an action filed in breach of a forum selection clause, that court did not address the conflict with the American Rule.  *See Allendale*, 992 F. Supp. at 286.  In addition, the one case it cited as authority for that proposition was decided under Illinois law, not New York law (as the *Allendale* Court erroneously believed).  *Id.*; *see Versatile*, 819 F. Supp. 2d at 243 n.9.  As for *Indosuez*, while it is a New York case that the Court must view as a "helpful indicator" of the position that the New York Court of Appeals would take, *see Reddington*, 511 F.3d at 133, the decision merely asserts that an award of damages obtained for breach of a forum selection clause "does not contravene the American Rule that deems attorneys' fees a mere incident of litigation," without any analysis of the issue.  758 N.Y.S. 2d at 311.  Accordingly, Brown Rudnick cannot

establish the damages element of its breach of contract claim based on SOI's violation of the forum selection clause. The claim therefore fails as a matter of law and is dismissed.[7]

## CONCLUSION

For the reasons stated above, Counter-Defendants' motion to dismiss is GRANTED in part and DENIED in part. In addition, although SOI has not moved for summary judgment, the Court nevertheless dismisses Count 3 of Brown Rudnick's Complaint, as Brown Rudnick has had an adequate opportunity to come forward with all of its evidence, *see Orix Credit Alliance*, 965 F. Supp. at 484, and the undisputed evidence reveals that Defendant is entitled to judgment as a matter of law. The Clerk of the Court is directed to terminate Docket No. 54. By separate Order dated today, the Court is entering a Notice of Initial Pretrial Conference.

SO ORDERED.

Dated: July 15, 2014
     New York, New York

JESSE M. FURMAN
United States District Judge

---

[7] The Complaint suggests that the only damages caused by SOI's breach of the forum selection clause are the attorneys' fees and litigation expenses that Brown Rudnick incurred, which the Court has now concluded are not recoverable. (*See* Compl. ¶ 36 ("SOI's breach proximately caused damages to Brown Rudnick of $121,565.86, which represents attorneys' fees and expenses.")). To the extent that Brown Rudnick believes that it incurred damages from the breach of the forum selection clause other than attorneys' fees and expenses, however, they may be recoverable and it may seek leave of the Court to replead its cause of action. *Cf. Versatile*, 819 F. Supp. 2d at 247 (holding that the non-breaching party could recover damages caused by breach of the forum selection clause other than attorney's fees and litigation expenses and directing the non-breaching party to apprise the Court of any such damages).