```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
BROWN RUDNICK, LLP,                                               :
                                                                  :
                              Plaintiff,                          :      13-CV-4348 (JMF)
                                                                  :
             -v-                                                  :      MEMORANDUM OPINION
                                                                  :            AND ORDER
SURGICAL ORTHOMEDICS, INC.,                                       :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

The facts relevant to this motion can be summarized briefly.[1] Brown Rudnick, LLP ("Brown Rudnick"), a law firm, filed this action against Surgical Orthomedics, Inc. ("SOI"), its former client, seeking attorney's fees it allegedly earned representing SOI in an arbitration proceeding. (Docket No. 1). SOI asserted counterclaims against Brown Rudnick and a former Brown Rudnick partner, Emilio Galvan (together with Brown Rudnick, "Counter-Defendants").[2] (Second Am. Answer & Second Am. Counterclaim (Docket No. 47) ("Counterclaim")). Further, two officers and directors of SOI, Steven and Andrew Hewes (the "Hewes Brothers" and, together with SOI, the "Former Clients"), filed an intervention complaint against the Counter-Defendants. (Am. Compl. Intervention (Docket No. 48) ("Intervention Complaint" or

---

[1] The Court's recent opinion denying in part and granting in part the parties' cross-motions to dismiss and for summary judgment — familiarity with which is assumed — contains a more detailed description of the background of this case. *See Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-CV-4348 (JMF), 2014 WL 3439620, *1-4 (S.D.N.Y. July 15, 2014).

[2] Emilio Galvan died in February 2014, and Celia Galvan was substituted for Emilio Galvan in her capacity as administrator or Emilio Galvan's estate. (Docket Nos. 74, 78). In August, the Former Clients dismissed their claims against Galvan's estate. (Docket No. 91).

"Intervention Compl.")).  The Former Clients alleged that the Counter-Defendants had committed malpractice by (1) negligently failing to disclose and obtain waivers for certain conflicts of interest among SOI and the Hewes Brothers, (2) failing to adequately prepare for the arbitration proceeding, and (3) asserting a retaining lien on the Former Clients' litigation files. (*See id.* ¶¶ 57-66; Counterclaim ¶¶ 55-63; *see also* SOI & Hewes Bros.' Joint Mem. Law Opp'n Mot. To Dismiss (Docket No. 61) ("Former Client's MTD Opp'n") 6-11).  In addition, SOI alleged breach of fiduciary duty, breach of contract, rescission, unjust enrichment, and exemplary damages (Counterclaim ¶¶ 38-53, 64-68), while the Hewes Brothers asserted breach of fiduciary duty and exemplary damages claims (Intervention Compl. ¶¶ 67-75).

On November 14, 2013, the Counter-Defendants filed a consolidated motion to dismiss and a motion for partial summary judgment.  (Docket No. 54).  In an Opinion and Order dated July 15, 2014, the Court denied the Counter-Defendants' motion for partial summary judgment, and granted in part and denied in part their motion to dismiss.[3]  To the extent relevant here, the Court dismissed all of the Former Clients' claims against Counter-Defendants, except for (1) both SOI's and the Hewes Brothers' malpractice claims to the extent that they were premised on the failure to present expert witnesses or doctors' testimony at the arbitration, (2) SOI's malpractice claim to the extent it was premised on the assertion of the retaining lien, and (3) the Hewes Brothers' fiduciary duty claim to the extent that it was premised on the assertion of the retaining lien.  *See Brown Rudnick*, 2014 WL 3439620, at *11.

Now pending before the Court is the Former Clients' motion to amend the Counterclaim and Intervention Complaint to (1) add detail to the Former Clients' claims about Brown

---

[3] The Court also granted the Former Clients partial summary judgment.  That aspect of the Court's ruling is irrelevant here.

Rudnick's failure to present expert witnesses or doctors' testimony at the arbitration (the "Expert and Doctor Claims"); (2) add a claim regarding the Counter-Defendants' failure to inform the Former Clients that the opposing party in the arbitration, Stryker Spine, had said it would consider a settlement offer if the Former Clients' made one (the "Settlement Inquiry Claims"); and (3) "clarify the pleadings" regarding Brown Rudnick's termination for cause due to its failure to disclose a conflict of interest, its failure to adequately prepare for the arbitration, its failure to present evidence and answer questions as requested by the Arbitration Panel, and its excessive billing (the "Termination for Cause Claims"). (Surgical Orthomedics, Inc.'s & Steven & Andrew Hewes's Reply Supp. Corrected & Am. Mot. Leave To Amend Second Am. Counterclaim & Am. Compl. Intervention (Docket No. 127) ("Former Clients' Reply") 1; *see also* Mem. Law Supp. Mot. Leave To Amend Second Am. Counterclaim Surgical Orthomedics, Inc. & Am. Compl. Intervention Steven and Andrew Hewes (Docket No. 121) ("Former Clients' Mem.") 2). For the reasons stated below, the motion is GRANTED in part and DENIED in part.

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, "[t]he Second Circuit has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam) (internal quotation marks omitted). The party opposing a motion to amend bears the burden of establishing that an amendment would be futile. *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). An amendment is not "futile" if it could withstand a motion to dismiss under Rule 12(b)(6). *See, e.g., Anderson News,*

3

*LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  Thus, a court must accept the facts alleged by the party seeking amendment as true and construe them in the light most favorable to that party.  *Aetna*, 404 F.3d at 604.  A proposed claim or defense is futile if it does not "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Significantly, because the Former Clients move to amend the Counterclaim and Intervention Complaint after the deadline for doing so provided by the Court's scheduling order (*see* Docket No. 94), they must also demonstrate "good cause" for the amendment.  Fed. R. Civ. P. 16(b)(4).  "'Good cause' depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  Specifically, the moving party "must demonstrate that it has been diligent in its efforts to meet the Court's deadlines," and that "despite its having exercised diligence, the applicable deadline could not have been reasonably met."  *Sokol Holdings v. BMD Munai, Inc.*, No. 05-CV-3749 (DF), 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009), *aff'd sub nom. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-CV-3749 (KMW) (DCF), 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009).  "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline."  *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks omitted).  Finally, leave to amend "may properly be denied for . . . undue prejudice to the opposing party by virtue of allowance of the amendment."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

In this case, Brown Rudnick does not oppose the amendments to the Expert and Doctor Claims.  (Brown Rudnick LLP's Partial Opp'n Mot. Leave To Amend (Docket No. 124) ("Brown Rudnick's Mem.") 1-2).  Accordingly, the Former Clients' motion with respect to those

claims is GRANTED.  Brown Rudnick does, however, oppose the proposed amendments to the Termination for Cause Claims and the Settlement Inquiry Claims.  With respect to the former, SOI and the Hewes Brothers argue that the proposed amendments do nothing more than "set out particular examples of the reasons for the termination of Brown Rudnick for cause" and that, while the Court previously dismissed most of their *malpractice* claims, they may nonetheless assert that the facts underlying those dismissed malpractice claims also constitute ethical violations that independently give rise to a claim of termination for cause.  (Former Clients' Mem. 2; Former Clients' Reply 1-7).  As Brown Rudnick correctly points out, however, the Former Clients previously treated the malpractice claims as the sole basis of their termination for cause claims.  (*See* Former Clients' MTD Opp'n).  Moreover, even if the Former Clients intended to distinguish between the two types of claims, the Court did not in its ruling.  *See* 2014 WL 3439620, at *11 (listing the Former Clients' only surviving claims without mentioning claims of termination for cause for ethical violations that did not rise to the level of malpractice).  If the Former Clients believed the Court mistakenly overlooked claims, it had fourteen days to file a motion for reconsideration.  *See* Local Civil Rule 6.3.  Having failed to do so, they may not now — five months after the Court's ruling — attempt to circumvent that time limit by filing a motion for reconsideration in the guise of a motion to amend the pleadings.

In any event, even if the Former Clients were not improperly trying to revive claims that had already been dismissed, the Court would still deny leave to add the Termination for Cause Claims because the Former Clients have failed to show "good cause" for their delay within the meaning of Rule 16.  As Brown Rudnick makes plain, the Former Clients have been privy to at least some of the evidence underlying the proposed Termination for Cause Claims for more than three years; indeed, they themselves produced some of the relevant evidence in discovery.

(Brown Rudnick's Mem. 15).  *See Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-CV-3489 (JMF), 2013 WL 1830416, at *5 (S.D.N.Y. May 1, 2013) (denying leave to amend after the amendment deadline where the moving party had a copy of the document upon which its proposed new claim was based "since at least the beginning of discovery" and had "itself produced the [document] in discovery").  Moreover, while the Former Clients provide an explanation for their delay in bringing the Settlement Inquiry and Doctor Claims (*see* Former Clients' Mem. 5-6), they do not even attempt to proffer an explanation — let alone an objectively reasonable one — for why they could not have amended their pleadings to bring the Termination for Cause Claims before the August 29, 2014 deadline.  In fact, although Brown Rudnick argued the lack of a good cause showing in its memorandum of law, the words "good cause" do not even appear in the Former Clients' reply memorandum of law.  (*See* Former Clients' Reply).  Having failed to demonstrate that they were diligent in their efforts to meet the Court's deadline, the Former Clients cannot now amend their pleadings to add the Termination for Cause Claims.

The Settlement Inquiry Claims are a different matter.  The Former Clients seek to amend the pleadings to add a claim that "Galvan failed to communicate to his clients an inquiry made by Stryker's counsel that his client would consider a good faith settlement offer from SOI and the Hewes Brothers" and told "both Stryker's attorney and his own clients, SOI and the Hewes Brothers, that no settlement was possible."  (Corrected & Am. Mot. Def./Counter-Pl. Surgical Orthomedic & Pl.-Intervenors Steven & Andrew Hewes Leave To Amend Second Am. Counterclaim & Am. Compl. Intervention, Respectively (Docket No. 122) ("Former Clients' Corrected Mot."), Ex. 1 ("Proposed Amended Counterclaim") ¶ 15; *see also id.*, Ex. 2 ("Proposed Am. Intervention Compl.") ¶ 7)).  Here, Brown Rudnick does not argue lack of good

6

cause; instead, it opposes the amendment only on futility grounds, contending that New York ethics rules require a lawyer to disclose only "an offer . . . to end the lawsuit," not an offer to consider an offer. (Brown Rudnick's Mem. 2, 21). Under Rule 1.4 of the New York Rules of Professional Conduct, however, lawyers are required both to inform their clients of "material developments in the matter," Rule 1.4(a)(1)(iii), and to keep their clients "reasonably informed about the status of the matter," Rule 1.4(a)(3); *see also* Rule 1.4, Comment 3 (explaining that Rule 1.4(a)(3) requires "that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation"). Given the Former Clients' allegations (*see* Proposed Am. Counterclaim ¶ 15 ("SOI and Hewes Brothers wanted to make a settlement offer but did not do so because the only counsel and information they had received from their lawyer, Galvan, was that no settlement was possible."); Proposed Am. Intervention Compl. ¶ 25 (similar)), a jury could plausibly find that Galvan's failure to communicate what could be construed as an invitation to begin settlement discussions violated those provisions. *See, e.g.*, *In re Thyden*, 877 A.2d 129, 143 (D.C. 2005) (holding that an attorney violated his ethical obligations under the District of Columbia Professional Rules of Conduct to inform the client of an "offer of settlement" by failing to notify the client of a letter from opposing counsel "requesting settlement discussions"). Thus, the Former Clients' motion to amend is GRANTED with respect to the Settlement Inquiry Claims.

For the foregoing reasons, the Former Clients' motion to amend is GRANTED with respect to the Expert and Doctor and Settlement Inquiry Claims, and DENIED with respect to the Termination for Cause Claims. The Former Clients shall file amended pleadings consistent with this Memorandum Opinion and Order by no later than **February 4, 2015.**

The Clerk of Court is directed to terminate Docket Nos. 120 and 122.

SO ORDERED.

Date: January 28, 2015
      New York, New York

                                    _____
                                    JESSE M. FURMAN
                                    United States District Judge

8